UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TIMOTHY S. KEES,    Plaintiff,

v.    Civil Action No. 3:16-cv-488-DJH-DW

COMMISSIONER OF SOCIAL SECURITY,    Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy S. Kees filed this action seeking review of the decision by the Commissioner of Social Security to deny his application for disability-insurance benefits. (Docket No. 1) Kees alleges disability due to headaches, brain injury, PTSD, tinnitus, and various problems with his left knee, shoulders, neck, right elbow, and back. (D.N. 17-1, PageID # 2117) Kees has now moved for judgment on the pleadings, requesting that the Court vacate the agency's decision and remand the matter for payment of benefits. (D.N. 17; D.N. 17-1) The case was referred to Magistrate Judge Dave Whalin for report and recommendation. (D.N. 14) Judge Whalin issued his Findings of Fact, Conclusions of Law, and Recommendation on June 20, 2017, recommending that Kees's motion for judgment on the pleadings be denied and that the Commissioner's decision be affirmed. (D.N. 24) Kees timely filed objections to Judge Whalin's report and recommendation. (D.N. 25) After careful consideration, the Court concludes that only one of Kees's numerous objections has merit. Sustaining that objection, however, requires reversal and remand of the case to the Commissioner of Social Security.

**I.**

On November 12, 2014, Kees filed an application for disability-insurance benefits asserting that he was unable to work because of his disabling conditions. (D.N. 13-5, PageID #

1

269-72) The Commissioner denied the application on January 16, 2015, and again upon reconsideration on July 8, 2015. (D.N. 13-3, PageID # 139-47, 149-64) Kees thereafter requested a hearing before an administrative law judge. (D.N. 13-4, PageID # 181) Administrative Law Judge Steven Collins held a hearing on December 8, 2015. (*Id.*, PageID # 194-217; D.N. 13-2, PageID # 91-137) On March 15, 2016, the ALJ issued an opinion finding that Kees was not disabled. (D.N. 13-2, PageID # 64-86) The ALJ determined, among other things, that Kees had the residual functional capacity (RFC)[1] to perform "light work" as defined in 20 C.F.R. § 404.1567(b). (*Id.*, PageID # 74-83) Further, the ALJ determined that considering Kees's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.*, PageID # 84-85) The appeals council denied Kees's request for review on May 27, 2016. (*Id.*, PageID # 54-58)

Kees filed this action on July 29, 2016, challenging the Commissioner's denial of his application for disability-insurance benefits. (D.N. 1) Kees has moved for judgment on the pleadings (D.N. 17), arguing that (1) the ALJ's RFC determination is not supported by substantial evidence and (2) the ALJ's determination regarding jobs that he could perform in the national economy is not supported by substantial evidence. (D.N. 17-1) The Court referred this matter to Magistrate Judge Dave Whalin, who issued a report and recommendation on June 20, 2017. (D.N. 14; D.N. 24) Judge Whalin recommends that this Court affirm the Commissioner's decision and deny Kees's motion for judgment on the pleadings. (D.N. 24, PageID # 2186)

**II.**

When reviewing a report and recommendation, this Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is

---

[1] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

2

made." 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which an objection is not made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Judge Whalin's report and recommendation to which Kees objects to determine whether relief is warranted.

As detailed in Judge Whalin's recommendation, the Commissioner has promulgated regulations setting forth a five-step sequential process for evaluating whether a claimant is disabled. (D.N. 24, PageID # 2172 (citing 20 C.F.R. § 404.1520(a)(1))) Only steps four and five are at issue in Kees's objections. At step four, the ALJ compares the claimant's RFC with the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can still do that kind of work, then the Commissioner will find that he is not disabled, and the analysis ends there. *Id.* The claimant has the burden of proof at step four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At step five, the ALJ considers the claimant's RFC with his age, education, and work experience to determine whether he can make an adjustment to other work. 20 C.F.R. § 404.1520(g). If the claimant cannot make such an adjustment, then the Commissioner will find that he is disabled. *Id.* The Commissioner has the burden of proof at step five. *Walters*, 127 F.3d at 529.

In reviewing an ALJ's decision, the Court asks "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Cutlip v. Sec'y of Health*

3

*& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Where substantial evidence supports the ALJ's decision, the Court "must affirm." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 466 (6th Cir. 2017) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Moreover, "[t]he findings of the [ALJ] are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

### III.

**A.     The ALJ's Evaluation of Dr. Stodola's Assessment**

Dr. Edward Stodola performed a "mental residual functional capacity assessment" of Kees. (D.N. 13-3, PageID # 159-62) Dr. Stodola found Kees mentally able to function in that he could understand and remember simple instructions; carry out those instructions for two-hour segments over an eight-hour workday, five days per week; relate adequately in task-oriented nonpublic work settings; and adapt to changes and pressures of a routine setting. (*Id.*, PageID # 161-62) The ALJ gave Dr. Stodola's opinion "great weight" in determining Kees's residual functional capacity. (D.N. 13-2, PageID # 83) Kees objects to Judge Whalin's finding that there was no error in the ALJ's evaluation of Dr. Stodola's assessment. (D.N. 25, PageID # 2187)

Kees argues that the ALJ failed to acknowledge other limitations opined by Dr. Stodola, including marked limitations in his ability to maintain attention and concentration for extended

4

periods, complete a normal workday and workweek, perform at a consistent pace, and respond appropriately to changes in work setting. (D.N. 17-1, PageID # 2127; *see* D.N. 13-3, PageID # 160-61) These marked limitations are found in Section I of the mental residual functional capacity assessment, however. (*See* D.N. 13-3, PageID # 159-61) Judge Whalin concluded that the ALJ did not err in failing to discuss or rely on the limitations in Section I of the assessment because they were not part of the final RFC finding. (D.N. 24, PageID # 2174-75) Indeed, as Judge Whalin pointed out (*id.*, PageID # 2175), several courts have concluded that this section of the form may be assigned little or no weight, as it is not part of the final RFC finding. *See, e.g.*, *Wright v. Colvin*, No. 0:14-20-EBA, 2015 WL 927445, at *2 (E.D. Ky. Mar. 4, 2015) ("Section I is merely a worksheet for the evaluator and does not constitute the evaluator's actual RFC assessment."); *Griffith v. Colvin*, No. 6:13-23-DCR, 2013 WL 5536476, at *6 (E.D. Ky. Oct. 7, 2013) ("'Section I of the form may be assigned little or no weight' because it is 'not the final RFC finding.'" (quoting *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636-37 (3d Cir. 2010))).[2] An ALJ therefore does not err in failing to incorporate Section I findings in his RFC determination. *See Griffith*, 2013 WL 5536476, at *6. It follows that the ALJ here did not err in failing to acknowledge or incorporate the marked limitations in his RFC determination.

In his objections, Kees asserts that he "has not simply argued that the ALJ committed error by failing to *incorporate* Dr. Stodola's Section 1 findings in his RFC determination, but rather that the ALJ purported to afford great weight to the opinion . . . while failing to fully acknowledge or discuss the marked limitations opined therein." (D.N. 25, PageID # 2187-88) But as explained above, the ALJ was not required to acknowledge or discuss the marked limitations found in Section I of the form. *See Wright*, 2015 WL 927445, at *2; *Griffith*, 2013

---

[2] Kees points out that these cases are "out-of-[d]istrict" and "unpublished" (D.N. 25, PageID # 2188), but he cites no cases holding otherwise.

5

WL 5536476, at *6. Moreover, it appears that the ALJ gave considerable weight to Dr. Stodola's final narrative of Kees's capacities and limitations in formulating Kees's RFC. (*See* D.N. 13-2, PageID # 83; D.N. 13-3, PageID # 161-62) And courts have found ALJ assessments of what a claimant can or cannot do to be supported by substantial evidence where the ALJ relied upon the narrative in Section III but not the findings in Section I. *See Wright*, 2015 WL 927445, at *3-4; *Griffith*, 2013 WL 5536476, at *5-6.

B.  **The ALJ's Development of the Record**

Kees also objects to Judge Whalin's finding that the ALJ fully and fairly developed the record. (D.N. 25, PageID # 2189) "An ALJ has a duty to develop the record." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015)). "The determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis." *Id.*

An ALJ must "individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual, communicative, and mental functions) capacities of the claimant in determining a claimant's RFC." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). A "function-by-function" evaluation is therefore required, but the ALJ is not required to discuss capacities for which no limitation is alleged. *Id.* Further, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548 (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. 2000) (unpublished table decision)).

Kees argues that "without a function-by-function analysis by an examining or treating physician, there is a gap created in the evidence which the ALJ did not rectify by ordering consultative examinations or recontacting [Kees's] treating physicians." (D.N. 25, PageID #

6

2189-90) Kees posits that in failing to develop the record in this way, the ALJ "erroneously relied on a lack of treating source opinions as an implicit opinion of non-disability and his own lay opinion of the medical evidence to determine the RFC." (*Id.*, PageID # 2190)

An ALJ is only required to recontact medical sources or order consultative evaluations if there is insufficient evidence in the record to determine whether a claimant is disabled or a conclusion cannot be reached on the basis of the current evidence. *See* 20 C.F.R. § 404.1520b(b)(2)(i), (iii). Here, the ALJ found that "the VA records are voluminous and updated through November 2015, and further contain comprehensive and longitudinal clinical findings sufficient to shed insight into Mr. Kees' physical and mental conditions and functioning, and thus additional evaluation by the agency is not warranted." (D.N. 13-2, PageID # 82) The ALJ then noted that although Kees had been "extensively evaluated for wide ranging physical and mental impairments," "not one treating or examining physician has assessed that he is disabled." (*Id.*, PageID # 83)

Kees asserts that the ALJ's analysis "misstates the evidence" because the record "does not contain any function-by-function analysis of [his] mental or physical limitations by an examining or treating source." (D.N. 17-1, PageID # 2128) But the Sixth Circuit has indicated that ALJs are not required to produce a detailed statement of a function-by-function analysis in writing. *See Delgado*, 30 F. App'x at 547. Rather, the ALJ must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548. After reviewing the ALJ's written opinion, the Court concludes that the ALJ fulfilled those requirements in this case. (*See* D.N. 13-2, PageID # 74-83)

Further, the Court is not persuaded by Kees's argument that the ALJ improperly relied on the absence of treating-source opinions regarding disability and based the RFC determination on his own lay opinion of the medical evidence. (*See* D.N. 25, PageID # 2190) To the contrary, the ALJ's written opinion shows that he relied on Kees's own testimony as to his symptoms, as well as medical tests, assessments, and evaluations, in determining the RFC. (*See* D.N. 13-2, PageID # 74-83) Moreover, Kees points to nothing in the record showing that the ALJ relied on his own lay opinion in determining the RFC. Finally, Kees's attack on the ALJ's "apparent discounting" of the medical opinion of Dr. Donna Sadler (D.N. 17-1, PageID # 2128-29) does not help his case. Dr. Sadler assessed Kees as having the capacity to perform medium work (D.N. 13-3, PageID # 162-63), but the ALJ afforded Kees "some benefit of doubt" in restricting him to "a limited range of light work." (D.N. 13-2, PageID # 83) If the ALJ erred in discounting Dr. Sadler's opinion, the error was in Kees's favor; it was harmless and does not require reversal. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001). The Court therefore agrees with Judge Whalin that the ALJ's decision as to Kees's RFC was supported by substantial evidence. Kees's objection to this portion of the report and recommendation will be overruled.

**C. The ALJ's Credibility Analysis**

In addition, Kees objects to Judge Whalin's finding that the ALJ's credibility analysis was supported by substantial evidence. (D.N. 25, PageID # 2190) In particular, Kees challenges the ALJ's finding that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (D.N. 17-1, PageID # 2129; *see* D.N. 13-2, PageID # 76)

"[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. However, "an ALJ's findings based on the credibility of

the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* Here, the ALJ gave a number of reasons for finding that Kees's statements were not credible. For example, Kees testified that he had not coached his children's tee-ball teams since 2012 because of his anxiety. (D.N. 13-2, PageID # 125-26) But in June and July of 2015, he reported that he was coaching tee-ball. (D.N. 13-11, PageID # 1965, 2016, 2019) The ALJ "could properly determine that [Kees's] subjective complaints [of his mental-health limitations] were not credible in light of [his] ability to perform other tasks." *Heston*, 245 F.3d at 536.

Kees makes five specific challenges to the ALJ's credibility analysis. First, the ALJ included only right upper extremity limitations in the RFC despite a VA disability rating of ten percent for the left shoulder based on painful motion of the shoulder and limited motion of the arm above shoulder level. (D.N. 17-1, PageID # 2130) But as Judge Whalin noted (D.N. 24, PageID # 2182), disability decisions made by other government agencies, including the VA, are not binding on the Social Security Administration. *See* 20 C.F.R. § 404.1504. In any event, the ALJ considered the VA disability ratings with respect to both shoulders (D.N. 13-2, PageID # 78) and determined based on the evidence that Kees was "still able to grasp, hold[,] and use objects effectively." (*Id.*) Because Kees makes no other challenge to that determination, the Court finds his objection to be meritless.

Second, the ALJ declined to find Kees disabled due to migraine headaches even though Kees had to visit the emergency room at least once for a persistent migraine headache. (D.N. 17-1, PageID # 2131) The ALJ noted that although Kees testified to constant headaches and migraines, treatment records "[did] not reveal complaints of persistent headaches or support for debilitating headache pain and/or limitations, and in fact show few headache complaints as a

9

whole." (D.N. 13-2, PageID # 79)  The ALJ further noted that Kees worked full time for several months despite his assertions of frequent headaches with no indication of excessive absenteeism. (*Id.*, PageID # 80)  Nonetheless, the ALJ found Kees's headaches to be severe and imposed work restrictions accordingly. (*Id.*)  The Court agrees with Judge Whalin that "evidence of one trip to the emergency room does not thwart the ALJ's conclusion that the treatment records do not reveal *persistent* migraine headaches." (D.N. 24, PageID # 2180)  Indeed, evidence in the record suggests that Kees's migraines were controlled by medication. (*See* D.N. 13-7, PageID # 437)

Third, Kees argues that the ALJ failed to take into account "the significant nature of [his] work accommodations" resulting from his migraine headaches. (D.N. 17-1, PageID # 2131-32)  According to Kees, his work accommodations allow him to turn the lights off during migraine episodes, use the bathroom at any time, take breaks when needed, and leave for frequent doctor's appointments. (*Id.*, PageID # 2131-32)  The record shows, however, that the ALJ acknowledged these accommodations multiple times in his opinion. (D.N. 13-2, PageID # 69-70, 74-75, 80)  Thus, the Court again agrees with Judge Whalin that the ALJ's credibility determination was sound.

Fourth, the ALJ declined to find Kees disabled despite his problems with PTSD. (D.N. 17-1, PageID # 2132-33)  Specifically, Kees argues that the ALJ's opinion of his medical condition was "misplaced" and failed to support his finding regarding credibility. (*Id.*, PageID # 2133)  The ALJ acknowledged that the VA assigned Kees's PTSD a fifty-percent disability rating but stated that the rating was "assigned partly on the reasonable conclusion [that Kees] is precluded from carrying and firing assigned weapons." (D.N. 13-2, PageID # 80)  Indeed, military records show that Kees was unable to carry and fire his assigned weapon as a result of his post-traumatic headache condition. (D.N. 13-5, PageID # 296)  In addition, the ALJ found

10

that although Kees's mental-health limitations were severe, they were not "at a severity as to be considered disabling." (D.N. 13-2, PageID # 81) While not binding, the VA's disability decision supports such a conclusion, as the VA determined that Kees suffered from "[o]ccupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress." (D.N. 13-5, PageID # 277) The Court therefore finds no error in the ALJ's conclusion that Kees's PTSD was not disabling.

Fifth, Kees argues that the ALJ "failed to fully discuss the VA disability ratings" assigned to Kees's cervical strain, left-knee osteoarthritis, collateral-ligament disruption, right-knee sprain, calcaneal spur, tinnitus, left-lumbar radiculopathy, and right-lumbar radiculopathy. (D.N. 17-1, PageID # 2133) Again, disability decisions made by the VA are not binding on the SSA. *See* 20 C.F.R. § 404.1504. And Kees points to no authority holding that the ALJ was required to consider and discuss each disability rating. In any event, the ALJ did consider the VA's disability ratings. (D.N. 13-2, PageID # 83) The Court therefore agrees with Judge Whalin that the ALJ did not err in his analysis. (D.N. 24, PageID # 2183)

In sum, the Court finds that the ALJ's credibility analysis was supported by substantial evidence. Kees's objection to this portion of the report and recommendation will therefore be overruled.

**D.     The ALJ's Finding that Kees Could Perform Other Work**

Finally, Kees objects that the ALJ did not accurately describe his limitations when he posed hypothetical questions to the vocational expert. (D.N. 25, PageID # 2188; *see also* D.N. 17-1, PageID # 2134) "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform

11

other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In *Ealy*, an ALJ relied on a vocational expert's testimony in response to a hypothetical that stated: "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* The doctor who completed a mental residual functional capacity assessment of the claimant, however, limited the claimant's ability to complete simple, repetitive tasks to two-hour segments over an eight-hour day where speed was not critical. *Id.* at 509, 516. The Sixth Circuit concluded that the hypothetical posed by the ALJ "should have included the restriction that [the claimant] could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* at 516. Because the hypothetical did not include those restrictions, the court held that the vocational expert's testimony could not serve as substantial evidence in support of the ALJ's determination that the claimant could perform certain work. *Id.* at 517.

Here, the ALJ relied upon testimony from a vocational expert that jobs existed in the national economy for an individual with Kees's limitations. (D.N. 13-2, PageID # 84-85, 128-29) The ALJ told the expert to assume that the individual "would be limited to simple, routine work involving only simple work-related decisions with occasional contact with coworkers, supervisors[,] and the public." (*Id.*, PageID # 128) The ALJ then asked the expert whether there were "other jobs" that that individual would be able to perform. (*Id.*, PageID # 129) The expert responded in the affirmative, stating that the individual could work as a nonpostal mail clerk, courier, messenger, stock clerk, or order filler. (*Id.*) Dr. Stodola, however, concluded that Kees was only mentally able to carry out simple instructions for two-hour segments over an eight-hour workday, five days per week. (D.N. 13-3, PageID # 161-62) Because the hypothetical questions

posed to the vocational expert did not include those specific durational limitations, the expert's testimony cannot serve as substantial evidence in support of the ALJ's conclusion that Kees can perform other work. *See Ealy*, 594 F.3d at 516. The Court will therefore sustain Kees's objection to the extent that it challenges the ALJ's failure to accurately portray Kees's impairments in posing hypotheticals to the vocational expert.

### IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Kees's objection (D.N. 25, PageID # 2188) to the ALJ's failure to accurately portray Kees's impairments to the vocational expert is **SUSTAINED**. The Court declines to adopt the Findings of Fact, Conclusions of Law, and Recommendation as to that issue. (D.N. 24, PageID # 2183) All other objections are **OVERRULED**.

(2) The balance of Magistrate Judge Whalin's Findings of Fact, Conclusions of Law, and Recommendation (D.N. 24) is **ADOPTED** and **INCORPORATED** by reference herein.

(3) Kees's motion for judgment on the pleadings (D.N. 17) is **GRANTED** insofar as it seeks reversal of the Administrative Law Judge's decision and remand for a new hearing.

(4) A separate judgment will be entered this date.

March 20, 2018

                                               **David J. Hale, Judge**
                                               **United States District Court**